IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

:

SHARON SAMPSON                          :

   v.                                   :   Civil Action No. DKC 15-0243

                                        :

UNITED STATES OF AMERICA, et al.
                                        :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this tort action is a motion for summary judgment filed by Defendant United States of America (the "United States"). (ECF No. 41). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for summary judgment will be granted.

**I.   Background[1]**

On March 4, 2012, Plaintiff Sharon Sampson ("Plaintiff") was walking with John Ford from a Popeye's restaurant to the New Carrollton Metro station when she tripped and fell on the sidewalk at the corner of Harkins Road and Ellin Road in Lanham, Maryland. (ECF No. 41-2, at 9-10). The United States owns the property at the corner where Plaintiff fell, and the Internal

---

[1] Unless otherwise noted, the facts outlined here are undisputed and construed in the light most favorable to Plaintiff.

Revenue Service is the tenant. (ECF No. 41-4, at 6). Plaintiff claims that she tripped over a lip between sidewalk panels adjacent to the cover of a utility box. (ECF No. 41-2, at 9).

On February 28, 2014, Plaintiff filed an administrative claim for damages with the United States General Services Administration, alleging that the fall caused various bodily injuries and other damages. (ECF No. 1 ¶ 9-10). The General Services Administration has neither accepted nor rejected the claim. (*Id.* ¶ 4). On January 28, 2015, Plaintiff filed the instant suit for negligence against the United States and Verizon Enterprise Solutions, LLC ("Verizon"), which Plaintiff believed owned and maintained the utility box. (ECF No. 1). Verizon submitted affidavit evidence that it did not own or operate the utility box in question, and its motion for summary judgment was granted on August 20, 2015. (ECF Nos. 8; 21; 22). Plaintiff and the United States proceeded to discovery, and the United States filed the instant motion for summary judgment on September 26, 2016. (ECF No. 41). Plaintiff responded on October 13, and the United States replied on October 31. (ECF Nos. 42; 43).

## II.  Standard of Review

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See*

Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 249. In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005), but a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences," *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted).

To prevail on a motion for summary judgment, the moving party generally bears the burden of showing that there is no genuine dispute as to any material fact. No genuine dispute of material fact exists, however, if the nonmoving party fails to make a sufficient showing on an essential element of her case as to which she would have the burden of proof. *Celotex*, 477 U.S. at 322-23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is her responsibility to

confront the summary judgment motion with an "affidavit or other evidentiary showing" demonstrating that there is a genuine issue for trial. *See Ross v. Early*, 899 F.Supp.2d 415, 420 (D.Md. 2012), *aff'd*, 746 F.3d 546 (4th Cir. 2014).

## III. Analysis

### A.   Applicable Law

Plaintiff brings her claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.* (ECF No. 1 ¶ 1). "The [FTCA] requires the government's liability to be determined 'in accordance with the law of the place where the act or omission occurred.'" *United States v. St. Louis Univ.*, 336 F.3d 294, 300 (4th Cir. 2003) (quoting 28 U.S.C. § 1346(b)(1)). Because the United States' alleged failure to maintain the sidewalk occurred in Maryland, Maryland law applies.

To establish a *prima facie* case for negligence under Maryland law, a plaintiff must prove: (1) the defendant owed a duty to protect the plaintiff from injury; (2) the defendant breached that duty; (3) the plaintiff suffered an injury; and (4) the defendant's breach was the proximate cause of the injury. *See Rosenblatt v. Exxon Co., U.S.A.*, 335 Md. 58, 76 (1994). The United States argues that it is entitled to summary judgment because (1) Plaintiff fell on a portion of the sidewalk that was a public way for which the municipality is responsible; (2) if Plaintiff was on a portion of the sidewalk for which the

United States is responsible, she was a trespasser or a bare licensee to whom only a minimal duty was owed; or (3) the defect in the sidewalk over which Plaintiff tripped was open and obvious to her. (ECF No. 41-1, at 8-11).

### B. Duty to Maintain Public Ways

The United States first argues that it had no duty to protect Plaintiff because she fell on a public way maintained by Prince George's County, Maryland (the "County"). (ECF No. 41-1, at 9). Municipalities have a duty to keep public ways, both streets and sidewalks, in a safe condition for public travel. *Bagheri v. Montgomery Cty., Md.*, 180 Md.App. 93, 98-99 (2008) (citing *Mayor of Balt. v. Eagers*, 167 Md. 128 (1934)). When a property abuts a public sidewalk that the owner has not constructed, the duty to maintain it rests with the municipality and not the abutting owner. *Leonard v. Lee*, 191 Md. 426, 430–31 (1948); *see also Weisner v. Mayor of Rockville*, 245 Md. 225 (1967) (noting that, even where a municipality requires a landowner to clear sidewalks of snow and ice, duty of care to pedestrians remains with municipality and not landowner).

Plaintiff does not contest that some portion of the sidewalk at the corner of Harkins Road and Ellin Road is the municipally-maintained public way. Rather, she contends that the place where she fell was on a portion of the sidewalk that was beyond the area maintained by the municipality. (ECF No.

5

42, at 5). Pictures of the corner at which Plaintiff fell attached to her deposition show a large expanse of sidewalk that connects four individual walkways: the two public sidewalks running along Harkins Road and Ellin Road, and two private sidewalks leading toward the IRS building. (*See* ECF No. 41-2, at 41-42). It is not clear from looking at them where the public way ends and the private sidewalk begins. The United States argues that Plaintiff's inconsistent deposition testimony and uncertainty as to the precise location of her fall entitle it to summary judgment, but Plaintiff's deposition testimony makes clear her allegation that she tripped on the IRS building side of the utility box, a portion of sidewalk that could be considered private. (ECF No. 41-2, at 10-11, 18-21).

The United States also provided deposition testimony from Denise Green, the United States' property manager for the IRS building. (ECF No. 41-4). Ms. Green's testimony that the County has done work on some portion of this sidewalk (*Id.* at 9) does not suggest that the County is responsible for all of it. Nor does her testimony that the County planned to do sixty square feet of sidewalk replacement in that location (*Id.* at 12) provide any insight without a calculation of the total square footage of the expanse of sidewalk and the exact location of those planned repairs. Her testimony that her maintenance responsibility ends at the line of bollards parallel to the

sidewalks (*Id.* at 10) provides a clear counterargument to Plaintiff's contention, as the bollard line follows a patch of shrubs well inside the point where Plaintiff alleges that she fell. The United States argues that Plaintiff has failed to meet her burden on the duty element of her negligence claim because she has not provided any evidence establishing where the line between public and private sidewalk is and that she was on the private portion. (ECF No. 433, at 4). Plaintiff's evidence that the United States was the owner of the property is sufficient here. A reasonable jury could determine that the United States' duty extended beyond the bollard line and that the area where Plaintiff fell was beyond the public way portion of the sidewalk. There remains a factual dispute as to exactly where Plaintiff tripped, and whether the United States or the County had the duty to maintain that portion of the sidewalk.

**C.   Plaintiff's Premises Liability Status**

The United States next argues that, even if Plaintiff was beyond the municipally-maintained public way, she was a trespasser or a bare licensee to whom only a minimal duty is owed. (ECF No. 43, at 6). Under Maryland premises liability law:

> [F]our classifications have been recognized: invitee, licensee by invitation, bare licensee, and trespasser. *Balt.* Gas & *Elec. v. Lane*, 338 Md. 34, 44 (1995). An invitee is a person "on the property for a

7

> purpose related to the possessor's business." *Id.* The possessor owes an invitee a duty of ordinary care to keep the possessor's property safe. *Id.* A licensee by invitation is a social guest to whom the "possessor owes a duty to exercise reasonable care to warn the guest of dangerous conditions that are known to the possessor but not easily discoverable." *Id.* A bare licensee is a person on the property with permission, but for his or her own purposes; the possessor owes no duty except to refrain from willfully or wantonly injuring the licensee and from creating "'new and undisclosed sources of danger without warning the licensee.'" *Wagner v. Doehring*, 315 Md. 97, 102 (1989) (quoting *Sherman v. Suburban Trust Co.*, 282 Md. 238, 242 (1978)). "Finally, a trespasser is one who intentionally and without consent or privilege enters another's property." *Id.* As for a trespasser, even one of tender years, no duty is owed except that the possessor may not willfully or wantonly injure or entrap the trespasser. *Murphy v. Balt. Gas & Elec.*, 290 Md. 186, 190 (1981).

*Balt. Gas & Elec. v. Flippo*, 348 Md. 680, 688-89 (1998). The duty owed to a bare licensee or trespasser is only a duty "to refrain from willfully or wantonly injuring the licensee and from creating new and undisclosed sources of danger without warning the licensee." *Flippo*, 348 Md. at 689 (internal quotation marks omitted). Plaintiff has not argued that the United States created the source of the danger or injured her willfully or wantonly. Nor could she, as Maryland cases have generally required injurious conduct of a "deliberate nature . . . i.e., conduct calculated to or reasonably expected to lead to

8

a desired result." *Doehring v. Wagner*, 80 Md.App. 237, 246 (1989); *accord Carter v. Balt. Gas & Elec. Co.*, 25 Md.App. 717, 723-24 (1975) (holding that installation of a "virtually invisible" wire fence across driveway to stop motorcyclists from entering premises was not sufficient to show willful or wanton intent to injure). Thus, if Plaintiff was a trespasser or bare licensee, she cannot show that the United States breached the duty owed and she would lose on summary judgment.[2] Plaintiff claims, however, that she was an invitee.

Invitee status may be proven in two ways: (1) by a showing of "mutual benefit," or (2) by proof of an "implied invitation." *Crown Cork & Seal Co. v. Kane*, 213 Md. 152, 159 (1957). The theory of mutual benefit extends invitee status to a person who enters premises as a customer for a "business purpose." *Bass v. Hardee's Food Sys., Inc.*, 982 F.Supp. 1041, 1044 (D.Md. 1997) (citing *Howard Cty. Bd. of Educ. v. Cheyne*, 99 Md.App. 150, 155 (1994)), *aff'd*, 229 F.3d 1141 (4th Cir. 2000). Plaintiff does not dispute that she was not providing a mutual benefit to the United States at the time of her fall. (ECF No. 42, at 7).

Under the theory of implied invitation, invitee status is conferred upon a person "[f]rom the circumstances, such as custom, the acquiescence of the owner in habitual use, the

---

[2] It is also undisputed that Plaintiff was not a licensee by invitation because she was not a social guest on the United States' property.

9

apparent holding out of the premises to a particular use by the public, or simply the general arrangement or design of the premises." *Crown Cork & Seal*, 213 Md. at 159. Plaintiff argues that she was an invitee under this theory. She contends that "[t]he configuration of the walkways and apron in front of 5000 Ellin Road . . . reasonably lead[s] those using the sidewalks along the perimeter to believe that they are invited to continue their journey to move across the area where plaintiff fell." (ECF No. 42, at 7).

Although Plaintiff relies on language from *Crown Cork & Seal*, the Court of Appeals of Maryland in that case specifically noted that the theory of implied invitation "rested, in whole or in part, upon circumstances indicating at least some economic benefit." *Crown Cork & Seal*, 213 Md. at 159-60. More applicable here is the principle that:

> A possessor of land who . . . knows or should know that others will reasonably believe it to be a public highway is subject to liability for physical harm caused to them, while using such part as a highway, by his failure to exercise reasonable care to maintain it in a reasonably safe condition for travel.

Restatement (Second) of Torts § 367 (1965). Some courts have referred to this principle as the "misled invitee doctrine," *see Epling v. United States*, 453 F.2d 327, 329-30 (9th Cir. 1971); *Lin v. Nat'l R.R. Passenger Corp*, 277 Conn. 1, 11 (2006),

10

although the Restatement states that such travelers "do[] not fall within any of the classifications under which it is customary to place persons entering [another's] land," and, instead, "liability depend[s] upon the fact that the other reasonably believes that the land is a highway" based on the owner's conduct.  Restatement (Second) of Torts § 367, Special Note.

Although the parties failed to cite to it, at least one Maryland decision has addressed this principle.  In *Doehring v. Wagner*, 80 Md.App. 237, 242-45 (1989), the Court of Special Appeals of Maryland chose not to apply the doctrine given that the trial court had failed to make any findings as to the appearance of the adjacent driveway, but the court indicated that the doctrine might apply "where a possessor of land has paved a strip of his land adjoining a public highway so that it appears to be a part of the highway."  *Id.* at 243.  The court went on to note that the last two factors under *Crown Cork & Seal* "deal with the appearance of the premises [and] address the same concerns as Restatement § 367."  *Id.* at 244 n. 4.  It further stated that, "[i]n an appropriate case, the combined effect of an owner's acquiescence in the presence upon his land of strangers, plus affirmative findings as to the [] factors enunciated in *Crown* [*Cork & Seal*], may have some impact on the status of an individual" under the doctrine.  *Id.* at 245.

11

The circumstances of the instant case fall squarely into the principle articulated in the Restatement and cases applying it. In *Sedita v. Steinberg*, 134 A. 243, 244 (Conn. 1926), for example, the Supreme Court of Errors of Connecticut reversed the lower court's determination that the plaintiff was a trespasser on a portion of sidewalk because it was "all of concrete, of grade with, and not marked off from, the sidewalk proper, and [the hazard was] about five feet inside the imaginary line of the sidewalk." The court held that a reasonable jury might have found the sidewalk "open for the use of all travelers who might choose to avail themselves of it." *Id.* Here, too, a jury could find that Plaintiff was on a portion of the United States property that she reasonably believed was a part of the public way. Therefore, summary judgment is not appropriate on this ground.

**D.   Open and Obvious Risk**

Finally, the United States argues that, even if Plaintiff were an invitee, it had no duty to protect her from any risk that was open and obvious to her. Under the "open and obvious" doctrine, a plaintiff is responsible for "exercising due care for [his or her] own safety, which includes a duty to look and see what is around." *Feldman v. NVR, Inc.*, No. GJH-14-0672, 2014 WL 6066022, at *3 (D.Md. Nov. 12, 2014). According to one treatise:

12

> The modern rule concerning the nature of "open and obvious" dangers is embodied in Restatement 2d, Torts § 343A(1) . . . . According to this provision of the Restatement, "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." The comments to § 343A(1) state that "'[o]bvious' means that both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment."

George E. Powell, Jr., 41 Am. Jur. Proof of Facts $3^d$ 65 (1997); see also *Pfaff v. Yacht Basin Co.*, 58 Md.App. 348, 354 (1984) (applying Restatement standard).

Whether a condition is open and obvious is typically a question for the factfinder, but a court may rule as a matter of law when it is clear that any reasonable person in a plaintiff's position must have understood the danger. *Feldman*, 2014 WL 6066022, at *3. There is no "exact test or formula" for determining whether a condition is open and obvious as a matter of law. *Gellerman v. Shawan Rd. Hotel Ltd. P'ship*, 5 F.Supp.2d 351, 353 (D.Md. 1998). It is, however, "common knowledge that small cracks, holes and uneven spots often develop in pavement[,] and it has been held that where there is nothing to obstruct or interfere with one's ability to see such a 'static' defect, the owner or occupier of the premises is justified in

13

assuming that a visitor will see it and realize the risk involved." *Id.* Pedestrians are thus "bound to protect themselves against any of the regular uses and obstructions, and comparative roughness of the ground." *Pierce v. City of Balt.*, 220 Md. 286, 290 (1959); *accord Coleman v. United States*, 369 F.App'x 459, 462 (4th Cir. 2010). A landowner's duty extends not to "customary, permissible uses or conditions," but rather to "dangers of a kind that would not be expected by foot passengers, dangers in the nature of traps." *Pierce*, 220, Md. at 286; *see also Mayor of Balt. V. Grossfeld*, 173 Md. 197, 200-01 (1937) (finding summary judgment was inappropriate because, unlike most sidewalk cases, there was a latent soft spot underneath the observable sidewalk defect).

Plaintiff argues that the sidewalk condition was not obvious to her because she was looking straight ahead and Mr. Ford and another woman on the sidewalk were blocking her view of certain portions of the ground. (ECF No. 42, at 8-9). Although pedestrians may be excused from observing open and obvious defects in certain circumstances, *see Comm'rs of Balt. Cty. V. Collins*, 158 Md. 335, 338 (1930) (affirming that a plaintiff "walking slowly and carefully" was excused from seeing a sidewalk defect because it was night and the closest streetlight was 400 feet away); *Denbow v. Chesapeake & Potomac Tel. Co.*, 199 Md. 609, 611-12, 619 (1952) (denying summary judgment where the

14

plaintiff fell into an open manhole because there was evidence that two people guarding the manhole distracted plaintiff, one stepping in his way and forcing him to change course into the manhole's direction), a plaintiff exercising reasonable care must account for "the miscellany of activity normally found on a public sidewalk." *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1054 (4th Cir. 1986) (applying Virginia law); *accord Schaefer v. United States*, No. PX-15-2690, 2017 WL 2506174, at *3 (D.Md. June 9, 2017); *Gellerman*, 5 F.Supp.2d at 353-54.  Other pedestrians on a sidewalk are clearly among the normal activity that can be expected and are not a sufficient distraction to excuse a pedestrian's failure to see what is in front of her. *See Schaefer*, 2017 WL 2506174, at *3; *see also Gellerman*, 5 F.Supp.2d at 353-54 (finding that moving vehicles in a parking lot were an expected distraction that would not excuse a failure to see a gap at the curb between a sidewalk and the parking lot).  Far from being "in the nature of a trap," *Pierce*, 220, Md. at 286, other pedestrians are an entirely common condition. As noted above, the open and obvious doctrine imposes a duty on a plaintiff to exercise due care for her own safety.  In this instance, that duty required her to account for both visible defects and other pedestrians.  Because she failed to do so, the United States' motion will be granted.

**IV. Conclusion**

For the foregoing reasons, the motion for summary judgment filed by Defendant United States will be granted. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
